## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| TAMMY REEVES, } | |
| } | |
| Plaintiff, } | |
| } | |
| v.  } | Civil Action No.: 4:14-CV-01970-RDP |
| } | |
| CAROLYN W. COLVIN, } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OF DECISION

Plaintiff Tammy Reeves brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). Based on the court's review of the record and the briefs submitted by the parties, and for the reasons explained below the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

On August 9, 2011, Plaintiff protectively filed applications for disability, DIB, and SSI, alleging that her disability began on April 1, 2011. (R. 145-146). Both of Plaintiff's claims were initially denied by the Social Security Administration on September 19, 2011. (R. 73-86). On September 30, 2011, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (R. 88-89). This request was granted, and Plaintiff received a hearing before ALJ Michael L. Brownfield on November 30, 2012. (R. 44-72). The ALJ determined that Plaintiff

was not under a disability, as defined within the Act from April 1, 2011 through the date of the decision, March 25, 2013. (R. 24-39). After the Appeals Council ("AC") denied Plaintiff's request for review of the ALJ's decision (R. 1-4), the ALJ's decision became the final decision of the Commissioner, and, therefore, a proper subject of this court's appellate review.

## II.     Statement of Facts

Plaintiff was thirty-seven years old at the time of her alleged disability onset date and thirty-nine at the time of the ALJ's decision. (R. 49, 145). She attended school until the ninth grade but did not complete the ninth grade. (R. 52). Plaintiff briefly attended a technical school and has a Certified Nursing Assistant ("CNA") certificate. (R. 52-53). She spent seventeen years working for various employers as a CNA until February 2006. (R. 52, 157). Following her work as a nursing assistant, Plaintiff worked as a fast food manager, sales associate, cashier, motel housekeeper, and security guard. (R. 55-59, 67, 157). Plaintiff has not reported any employment since April 1, 2011 (R. 14-15, 157), which is the date that she claimed her disability began. (R. 59-60, 145-146). However, since April 2011, she has volunteered through her church at a transitional house in exchange for room and board. (R. 60, 165-166). In this volunteer position, Plaintiff drives women residents to work, GED classes, recovery classes, and other appointments; she also reads to the women daily, and "keeps an eye on them." *Id.*

In addition to her past volunteer work at the transitional house, Plaintiff does her own household cleaning and laundry, cooks her own meals, goes outside daily, drives a car, and usually goes shopping once a week. (R. 165-169). She often has to take breaks or sit down during these tasks and her son often assists her when grocery shopping. (R. 63-64). Plaintiff attends church on a regular basis. (R. 170). She has experienced no changes in her social activities since her alleged disabilities began. (R. 171).

A Vocational Expert ("VE") testified during the hearing that Plaintiff could perform work at a light level of exertion or sedentary work. (R. 69-70).  Specifically, Plaintiff could work as a cashier, a housekeeper, or a sedentary security guard as she did in the past. *Id.*  The VE explained that a number of jobs exist in the national economy that Plaintiff can perform. (R. 70-71).

Plaintiff alleges her disability is caused by chronic back and right hip pain, hypertension, lower extremity edema, and arthritis. (R. 59, 150, 171).  In 2007, Plaintiff had back surgery. (R. 66, 258-265).  As noted by the ALJ, she also has the severe impairment of obesity. (R. 29). During the hearing, Plaintiff mentioned problems with anxiety. (R. 30, 65).  Plaintiff also explained that she had to frequently use the restroom because of her hypertension medicine (R. 59, 61-62); however, she did not provide any evidence of prior complaints of this side effect to her primary care provider. (R. 30).

Plaintiff's primary care provider is Phillip Rogers, a nurse practitioner at Quality of Life Health Services. (R. 30, 447).  Plaintiff first visited that clinic on July 26, 2010, seeking medical treatment for hypertension. (R. 302).  During her visit, Plaintiff's physical exam revealed no musculoskeletal, neurological, or back and spine abnormalities. (R. 304).  In a Social Security Disability Questionnaire, Mr. Rogers noted that Plaintiff has been disabled since the date he first saw her in 2010 due to lower back pain. (R. 447-448).  At this point, Plaintiff was employed as a fast food manager. (R. 157).

In February 2011, Plaintiff was admitted into an emergency room with abdominal pain and had her gallbladder removed. (R. 284, 291).  During this visit, she had no back pain, no edema, and a fair range of motion of her peripheral joints. (R. 284-285).  In September 2011, Plaintiff was admitted into the emergency room with severe hip pain. (R. 47, 518).  At this point, her spine was "non-tender" and her hip had a normal range of motion with moderate tenderness.

(R. 520).  Upon discharge, Plaintiff was in a stable condition and was instructed to "follow up" with Mr. Rogers "in one day" and "to return to the Emergency Department immediately if symptoms worsen or fail to improve." (R. 521).  There is no indication in the record that Plaintiff did either.

On October 16, 2012, Dr. Daniel Prince[1] performed an independent medical evaluation of Plaintiff at the request of Plaintiff's attorney. (R. 515-517).  Dr. Prince noted that Plaintiff had no edema and that her balance was poor. (R. 516).  He concluded that Plaintiff was at high risk of falling and that Plaintiff has "[c]omplete permanent chronic disability secondary to chronic right L5-S1 lumbar radiculitis, spinal stenosis, advanced lumbar spondylolisthesis and morbid obesity." (R. 517).

Following the ALJ's final decision, Dr. Jane Bush Teschner conducted an independent medication examination of Plaintiff on June 13, 2013. (R. 8-20).  Dr. Teschner diagnosed Plaintiff with morbid obesity, hypertension, anxiety, depression, and chronic pain in the lumbar spine, right hip, and right knee. (R. 16).  Dr. Teschner concluded that Plaintiff's lower back and right hip pain were severe impairments. (R. 17).  Dr. Teschner suggested that the ALJ was wrong in deciding that Plaintiff did not meet the conditions in Listings 1.02 and 1.04.  (R. 18-19).  The AC found that this new opinion did not change the results of the ALJ's decision, and it was not chronologically relevant to the ALJ's decision on March 25, 2013. (R. 2).

### III.  ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is

---

[1] Dr. Prince is a physician though not currently practicing in Alabama,

4

work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ first determined that Plaintiff met the insured status requirements of the Act. (R. 29). Next, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2011, her alleged onset date of disability. *Id.* The ALJ then decided that Plaintiff's degenerative disc disease of the lumbar spine status post lumbar laminectomy, degenerative joint disease of the right hip, hypertension, and obesity constituted severe impairments because this combination of impairments significantly limit Plaintiff's ability to perform basic work activities. *Id.* The ALJ also concluded that Plaintiff's complaints of anxiety, edema, and frequent use of the restroom are non-severe impairments, explaining that there was no evidence that these impairments caused any sustained functional or work-related limitations, both on a standalone basis and in combination with Plaintiff's other impairments. (R. 30-31). Overall, the ALJ determined that Plaintiff does not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 31).

The ALJ found that Plaintiff has the RFC to perform sedentary work; however, she is limited to occasional operation of foot or leg controls and occasional climbing, balancing, stooping, kneeling, crouching, or crawling. (R. 32). The ALJ noted that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, and vibrations and is precluded from working around unprotected heights or dangerous machinery. *Id.* After determining Plaintiff's RFC, the ALJ concluded that Plaintiff "is capable of performing past relevant work as a security guard" as this work does not require Plaintiff to perform work-related activities precluded by her RFC. (R. 37). Additionally, the ALJ noted that Plaintiff is able to perform a number of other jobs that exist in the national economy. *Id.* In conclusion, the ALJ found that Plaintiff has not

been under a disability, as defined in the Act, from April 1, 2011, through March 25, 2013, the date of the ALJ's decision. (R. 38).

## IV.  Plaintiff's Argument for Reversal

After a lengthy introduction filled with excerpts from the record, Plaintiff makes the following arguments: (1) the ALJ improperly rejected the opinion of Dr. Prince, an independent medical examiner (Pl.'s Mem. 20-23); (2) the ALJ did not give proper weight to the opinion of Certified Registered Nurse Practitioner Rogers and improperly rejected his opinion (Pl.'s Mem. 23-26); (3) the ALJ improperly found Plaintiff not credible and failed to use the proper pain standard in evaluating her claims (Pl.'s Mem. 26-33); and (4) the AC improperly failed to remand this matter in order for the ALJ to consider a new independent medical examination from Dr. Teschner. (Pl.'s Mem. 33-41).  The court addresses these contentions below.

## V.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

After careful review, the court concludes that the ALJ's findings are supported by substantial evidence and that the ALJ applied the correct legal standards.

### A. The ALJ Properly Considered the Independent Medical Examination of Dr. Prince

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Prince, an independent medical examiner, because his services were secured by Plaintiff's attorney and he expressed an opinion on Plaintiff's disability. (Pl.'s Mem. 20). On October 16, 2012, Dr. Prince opined that Plaintiff had complete, permanent chronic disability based on Plaintiff's lumbar impairment and morbid obesity (R. 36, 517). Plaintiff's claim is without merit. The ALJ considered multiple factors in evaluating the proper weight to afford Dr. Prince's evaluation and supported his reasoning with substantial evidence. (R. 36).

To begin, because Dr. Prince is "not currently a practicing physician in Alabama" (R. 515), it is unclear whether or not Dr. Prince is licensed and should be treated as an acceptable medical source or, instead, as an "other" source. *See* 20 C.F.R. §§ 404.1502, 404.1513(a), (d)(1), 416.902, 416.913(a)(1). "Other" sources are not acceptable medical sources. *See* 20 C.F.R. §§

8

404.1513(a), (d)(1), 404.1527(a)(2), 416.913(a); *see also Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 898, 901 (11th Cir. 2014). Although the ALJ can consider evidence from "other" sources when deciding the severity of an impairment or a combination of impairments, this evidence is not entitled to any special weight. *See* 20 C.F.R. § 404.1513(a), (d)(1).

Even assuming Dr. Prince is a licensed physician (as the ALJ did here), Dr. Prince served as a non-treating, examining source because he had no longitudinal treating relationship with Plaintiff. *See* 20 C.F.R. § 404.1502. As a non-treating, examining source, Dr. Prince's opinion is not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2); *Denomee v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician."). Among other relevant factors, the ALJ should consider the length and nature of the treatment relationship, the support provided in a medical opinion, the medical opinion's consistency with the record, and the specialization of the physician when considering how much weight to afford to a medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Hearn v. Comm'r, Soc. Sec. Admin.*, 619 Fed. App'x 892, 895 (11th Cir. 2015). Furthermore, the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

In this case, substantial evidence supports the ALJ's finding that Dr. Prince's opinion was inconsistent with other objective medical evidence and the record. (R. 36); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford v. Comm'r, Soc. Sec. Admin.*, 363 F.3d 1155, 1159-1160 (11th Cir. 2004). The ALJ discussed inconsistencies between Dr. Prince's evaluation and the record. (R 36). For instance, the ALJ noted that Dr. Prince's opinion seemed to be driven by his belief that Plaintiff was at a high risk of falling and injuring herself; however, when questioned

during the hearing about falling, Plaintiff could only think of one instance involving her falling – in 2007, prior to her back surgery. (R. 36, 66). Additionally, Dr. Prince's single examination, or "snapshot" of Plaintiff's condition, was inconsistent with the treatment notes of Mr. Rogers, Plaintiff's longitudinal treatment provider. (R. 35-36, 303-304, 313, 316, 318-319, 482-484, 492, 497). The ALJ considered multiple factors when weighing the importance of Dr. Prince's opinion; he did not limit his considerations to the fact that Plaintiff's attorney referred Dr. Prince to Plaintiff. (R. 36).

As the ALJ correctly noted, although medical opinions can contribute to an ALJ's decision, the Commissioner has the final responsibility to decide whether an individual meets the statutory definition of disability. 20 C.F.R. §§ 404.1527(d), 416.927(d). Based on the record, it is evident that the ALJ considered the factors set forth in the regulations and articulated good cause for not deferring to Dr. Prince's opinion. (R. 36). Therefore, the ALJ did not err in its considerations of Dr. Prince's independent medical examination of Plaintiff.

### B. The ALJ Afforded Proper Weight to the Opinion of Nurse Practitioner, Mr. Rogers

Plaintiff also contests the weight the ALJ accorded to the opinion of Mr. Rogers, the certified nurse practitioner who served as Plaintiff's primary care provider. (Pl.'s Mem. 23). Specifically, Plaintiff contends that the ALJ rejected Mr. Rogers' opinion because Mr. Rogers was not an acceptable medical source and because Mr. Rogers gave an opinion on Plaintiff's disability status. *Id.* The ALJ, however, closely examined Mr. Rogers' treatment notes and, in doing so, found Mr. Rogers' opinion to be inconsistent with his own notes. (R. 34-36).

A certified registered nurse practitioner is not an acceptable medical source and is considered an "other" source. *See* 20 C.F.R. § 404.1513(a), (d)(1). As discussed above, an "other" source cannot offer an official "medical opinion." *See* 20 C.F.R. §§ 404.1513(a), (d)(1),

10

404.1527(a)(2). Furthermore, only evidence from an acceptable medical source can establish whether an individual has "a medically determinable impairment." *See* 20 C.F.R. § 416.913(a). Although an ALJ may consider the evidence presented by a witness such as Mr. Rogers, his opinion along with evidence originated by him is not entitled to any controlling weight or deference. *See* 20 C.F.R. §§ 404.1513(a), (d)(1); *see also Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012).

Here, the ALJ properly noted that Mr. Rogers was not an acceptable medical source but nevertheless evaluated his opinion and notes while deciding Plaintiff's impairment severity and functional effects. (R. 35). Upon examination, the ALJ found Mr. Rogers' opinion that Plaintiff was disabled to be inconsistent with his own treatment notes. (R. 36). Although Mr. Rogers stated that Plaintiff had been disabled since July 26, 2010, his treatment notes on that day indicate that Plaintiff had no back or spine abnormalities, a normal musculature with no joint deformities or abnormalities, and a "normal range of motion for all four extremities." (R. 304). Additionally, his treatment notes of Plaintiff, compiled from 2010 through 2012, reflect that Plaintiff had not complained of more than moderate pain, and that her pain had been somewhat relieved by medication. (R. 304, 308, 310, 313, 316, 319, 487, 492, 496, 501, 505, 508). Overall, it is evident that the ALJ thoroughly considered Mr. Rogers' opinion and treatment notes along with Plaintiff's medical history. (R. 34-36). The ALJ pointed to substantial evidence in the record which supports his rejection of Mr. Rogers' opinion.

### C. The ALJ Gave Proper Weight to Plaintiff's Subjective Testimony and Properly Considered Plaintiff's Claims

Plaintiff also alleges that the ALJ failed to utilize the proper pain standard and improperly rejected Plaintiff's testimony of severe pain. (Pl.'s Mem. 26). Of course, an ALJ must rely upon substantial evidence in discrediting a claimant's subjective pain testimony. *Hale v. Bowen*, 831

F.2d 1007, 1012 (11th Cir. 1987).  If an ALJ fails to do so, then that ALJ, as a matter of law, has accepted the claimant's subjective pain testimony as true.  *Id.*  When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b); SSR 96-7p, 61 Fed. Reg. 34, 483-01 (July 2, 1996); *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 404.1529(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26.  In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

In this case, however, the ALJ articulated several valid reasons for refusing to credit Plaintiff's subjective pain testimony. (R. 34-35).  Substantial evidence supports the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of her alleged symptoms were not credible.  (R. 37).

The ALJ cited numerous inconsistencies between Plaintiff's testimony and the record. *Id.* Although Plaintiff testified that her average pain is an eight on a ten-point scale (R 63), Plaintiff did not report pain levels higher than a five on a ten-point scale to Mr. Rogers, her primary care provider. (R. 304, 308, 310, 313, 316, 319, 487, 492, 496, 501, 505, 508).  Additionally, in the

hearing, Plaintiff claimed to experience various side effects from her medications (R. 59, 61), yet, as noted by the ALJ, her medical records do not reflect complaints of such side effects. (R. 30). Plaintiff alleged she was limited in her work abilities because of edema (R. 59, 62); however, Plaintiff's examinations typically revealed no edema in her extremities. (R. 308, 310, 313, 316, 319, 488, 492, 501, 509, 566). The ALJ also highlighted inconsistencies between Plaintiff's testimony concerning her limited daily activities and her Function Report, which reflected fairly good activities of daily living. (R. 34, 165-173).

The ALJ noted that "the record strongly suggests that [Plaintiff] exaggerated her symptoms and limitations at the hearing for disability purposes." (R. 35). Substantial evidence supports this conclusion. (R. 30-31, 33-35). As such, this court will not disturb the ALJ's clearly articulated finding. *See, e.g.*, *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (explaining that when the ALJ's determination is based on substantial evidence, a court should uphold that decision); *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (same).

### D. The Appeals Council Properly Considered Plaintiff's Additional Evidence

Finally, Plaintiff argues that the Appeals Council should have considered new evidence when evaluating the ALJ's decision. (Pl.'s Mem. 33). In particular, Plaintiff contends that the June 13, 2013 medical examination report from Dr. Teschner was chronologically relevant to the ALJ's decision. (Pl.'s Mem. 33, 37). Because the new evidence submitted to the Appeals Council was not "new, noncumulative evidence," the chronological relevance is inconsequential. *See Clough v. Soc. Sec. Admin., Comm'r*, 2016 WL 66843, at *1 (11th Cir. 2016).

The Appeals Council "must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.970(b)).

"Whether evidence is 'new, material, and chronologically relevant' is a question of law subject to *de novo* review." *Clough*, 2016 WL 66843, at *1. Chronologically relevant evidence "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §404.970(b). If there is a reasonable possibility that new evidence would change the administrative result, that new evidence is material. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

In this case, the Appeals Council found that Dr. Teschner's medical examination report was not chronologically relevant to the ALJ's decision. (R. 2). Dr. Teschner's examination on June 13, 2013, occurred over two months after the ALJ's March 25, 2013, decision. (R. 2, 8-20). Plaintiff claims that this medical examination was chronologically relevant because Dr. Teschner "related [Plaintiff's] condition to long standing problems . . . ." (Pl.'s Mem. 37). Plaintiff is correct. In addition to conducting an examination of Plaintiff, Dr. Teschner reviewed Plaintiff's medical records that predated the ALJ's March 2013 decision and discussed Plaintiff's conditions prior to that decision. (R. 10-13). Accordingly, Dr. Teschner's evaluation "relate[s] back to the period before the ALJ's decision." *Washington*, 806 F.3d at 1322 (11th Cir. 2015).

However, Dr. Teschner's medical examination report did not present <u>new</u>, material evidence in that it did not provide "objective medical evidence which the ALJ previously had found to be wanting." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Dr. Teschner diagnosed Plaintiff's severe impairments to be "chronic lower back and right hip pain" and noted that "[m]orbid obesity greatly exacerbates the conditions that cause the pain." (R. 17). Dr. Teschner's evaluation is consistent with the ALJ's finding that Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar spine status post lumbar laminectomy; degenerative joint disease of the right hip; hypertension; and obesity . . . ." (R. 29).

Although Dr. Teschner disagrees with the ALJ's decision (R. 18-19), the finding of disability is a legal determination to be made by the Social Security Administration, rather than by a medical opinion. *See* 20 C.F.R. § 404.1527(d)(1); *see also* 2016 WL 66843, at *1.  Notably, had the ALJ had the opportunity to consider Dr. Teschner's opinion, it would not be entitled to controlling weight as a non-treating, examining source. *See* 20 C.F.R. § 404.1527(c)(2); *Denomee v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013).

Additionally, Plaintiff submitted new treatment notes from Gadsden Regional Medical Center concerning a September 2011 hospital visit for acute hip pain and Plaintiff's treatments in 2007 and 2008. (R. 518-558).  The new evidence from 2007 and 2008 hospital records predates Plaintiff's alleged disability onset date of July 2011, making these records irrelevant to the ALJ's ruling. (R. 531-558).  Consistent with the record that the ALJ considered, the 2011 Gadsden Regional Medical Center new evidence indicates that Plaintiff had a normal range of motion of her hip and that her condition was stable upon discharge from the hospital. (R. 520).  Also, although the ALJ did not have access to this September 2011 medical record, he was aware of Plaintiff's September 2011 hospital visit when he made his decision and presumably considered this fact when making his decision. (R. 47).  Thus, this new evidence simply does not undermine the ALJ's ruling.

Plaintiff also submitted additional Quality of Life Health Services treatment records from October 2012 through March 2013. (R. 559-576).  Again, these records are consistent with the ALJ's findings and, therefore, are not contrary to the weight of evidence that the ALJ considered. 20 C.F.R. § 404.970(b).  For instance, these records document moderate pain levels (R. 561, 565), no edema (R. 570, 574), and symptoms relieved by medication. (R. 559, 563).

When examining the record and new evidence as a whole, this new evidence does not create a "reasonable possibility that it would change the administrative result." *Hyde*, 823 F.2d at 459.  Accordingly, the Appeals Council did not err in declining to review Plaintiff's claim.

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this February 29, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE